268 P.3d 392

**In re MH2010–002348.**

**No. 1 CA–MH 11–0013.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 29, 2011.

---

Thomas C. Horne, Arizona Attorney General By Kathleen P. Sweeney, Assistant Attorney General, Joel Rudd, Assistant Attorney General, Aubrey Joy Corcoran, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Marty Lieberman, Maricopa County Legal Defender By Colin F. Stearns, Deputy Legal Defender, Phoenix, Attorneys for Appellant.

## OPINION

BARKER, Judge.

¶ 1 This matter requires us to consider the relationship between the statutes governing those found Guilty Except Insane ("GEI") pursuant to Arizona Revised Statutes ("A.R.S.") sections 13–502 and –3994 (2010), and those that apply to administering involuntary treatment to persons in civil commitment proceedings. A.R.S. §§ 36–501 to – 546.01 (2009). For the reasons that follow, we affirm the trial court's ruling ordering Appellant, a patient committed to the Arizona State Hospital ("Hospital") pursuant to a GEI adjudication, to receive court-ordered treatment.

### Facts and Procedural Background

¶ 2 In 2007, Appellant ("Patient") was adjudicated GEI and committed to the Hospital for a term of 10.5 years. A GEI defendant is placed under the jurisdiction of the Psychiatric Security Review Board ("PSRB") and committed to a mental health facility for a "period of treatment." A.R.S. §§ 13–502(D), –3994(A). Notwithstanding this statutory grant, the GEI statutes do not address what procedure is to be followed when a GEI defendant refuses non-emergency treatment deemed necessary. Accordingly, on October 19, 2010, the Hospital filed a petition for court-ordered treatment pursuant to Arizona's civil commitment statutes. A.R.S. § 36–501 to –546.01 (2009). The petition alleged that Patient was suffering from a mental disorder and was persistently or acutely disabled; it asked the court to order treatment pursuant to A.R.S. § 36–540(A)(2). The petition was supported by the affidavits of Dr. S. and Dr. M.

¶3 On October 27, the court granted Patient's motion to continue the hearing on the petition for court ordered treatment to November 17. Patient requested the continuance so that he could obtain a medical examination. By November 17, Patient had not yet been able to obtain an independent medical evaluation. When Patient requested a second continuance, the court granted his request, and the hearing was moved to December 8.

¶4 At the hearing on December 8, counsel stipulated to admit the affidavits by Dr. S. and Dr. M., the medication affidavit signed by Dr. B., and the expert testimony of Dr. S. and Dr. B. The court heard testimony from the physicians and from two acquaintance witnesses. At the close of the hearing, the court found, by clear and convincing evidence, that Patient was persistently or acutely disabled as a result of a mental disorder, that he was in need of psychiatric treatment, and that he was unwilling to accept voluntary treatment. Finding no appropriate available alternative, the court ordered Patient to remain at the Hospital for inpatient treatment for a period not to exceed 180 days.[1]

¶5 Patient filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. §§ 36–546.01 (2009), 12–2101(K)(1) (2003).

### Discussion

¶6 Patient appeals the order for involuntary mental health treatment arguing (1) that the court did not have jurisdiction because the court failed to strictly comply with statutory requirements pertaining to civil commitment proceedings, and (2) there was insufficient evidence for the court to find him persistently or acutely disabled.

■ ¶7 We review issues involving the application and interpretation of statutes de novo. *In re Jesse M.*, 217 Ariz. 74, 76, ¶ 8, 170 P.3d 683, 685 (App.2007). The legislature has narrowly tailored the statutes providing for involuntary treatment, and as a general rule we strictly apply them because they typically result in a significant deprivation of liberty. *In re MH 2007–001264*, 218 Ariz. 538, 539, ¶ 6, 189 P.3d 1111, 1112 (App.

2008). However, we will only disturb a court order for involuntary treatment if it is "clearly erroneous or unsupported by any credible evidence." *In re MH 94–00592*, 182 Ariz. 440, 443, 897 P.2d 742, 745 (App.1995).

### 1. Jurisdiction

¶8 Patient contends that the court did not have jurisdiction to enter an order for treatment pursuant to A.R.S. § 36–535 (Supp. 2010) for two reasons: (a) the hearing was untimely and (b) pre-petition procedures were not followed.

#### (a) Timeliness of the Hearing

¶9 For purposes of this discussion, we assume without deciding that the civil commitment statute applies to the petition for treatment at issue here. We separate this issue from civil commitment procedures that precede a petition for treatment for reasons that will become clear in the following section.

■ ¶10 As to the timeliness of a hearing on a petition for treatment, A.R.S. § 36–535(B) states:

> The court shall order the hearing to be held within six business days after the petition is filed[.] Except that, on good cause shown, the court may continue the hearing at the request of either party. The hearing may be continued for a maximum of thirty days at the request of the proposed patient. The hearing may be continued for a maximum of three business days at the request of the petitioner. If the hearing is continued at the request of the petitioner and the proposed patient is involuntarily hospitalized, the proposed patient may request a hearing to determine whether the proposed patient should be involuntarily hospitalized during the continuation period.

The statute "grants a patient the right to a hearing or release within six days unless [the patient] requests a continuance . . . if the patient requests a continuance, the court may set the hearing later than six days after the petition was filed, up to a maximum of

---

1. The 180–day period has expired. Because this issue may recur, we address it.

thirty days." *In re MH 2003–000240,* 206 Ariz. 367, 369, ¶ 6, 78 P.3d 1088, 1090 (App. 2003) (emphasis omitted).

¶ 11 To protect a proposed patient's liberty interests,[2] the statute requires that a hearing be held within six days of filing the petition. A.R.S. § 36–535(B). This time limit can be extended only three days at the request of the petitioner; however, at the request of the patient, the court may grant a continuance of up to thirty days. *Id.* Courts require strict compliance with the statutory requirements for civil commitment, but a failure to strictly comply will not automatically divest the court of jurisdiction. "For a statute to divest the superior court of jurisdiction ... the legislature must declare its intent to create divestiture 'explicitly and clearly.'" *Fry v. Garcia,* 213 Ariz. 70, 72–73, ¶ 9, 138 P.3d 1197, 1199–1200 (App.2006) (citations omitted) (stating that where the statutory scheme does not state that superior court will lose authority, legislature did not intend divestiture). Here, the statutory scheme does not explicitly state that violating the time limits will strip the court of jurisdiction. Thus, there is no automatic loss of jurisdiction.

¶ 12 Patient was the impetus behind the deviation from the statute. The time that elapsed between filing the petition and holding the hearing was longer than thirty days because Patient requested two continuances. The court granted both continuances to provide Patient an opportunity to obtain an independent medical evaluation.

"By the rule of invited error, one who deliberately leads the court to take certain action may not upon appeal assign that action as error." *Schlecht v. Schiel,* 76 Ariz. 214, 220, 262 P.2d 252, 256 (1953); *see also State v. Armstrong,* 208 Ariz. 345, 357 n. 7, ¶ 59, 93 P.3d 1061, 1073 n. 7 (2004) (stating that the invited error doctrine exists to prevent a party from injecting error into the record and then profiting from that error on appeal). Thus, while the court erred by continuing the hearing beyond the statutory limit, Patient invited this error and cannot seek to vacate the order on appeal.[3] *See MH 2007–001264,* 218 Ariz. at 540, ¶ 12, 189 P.3d at 1113 ("In the absence of a continuance request from the patient" the court could not continue the hearing beyond the six-day time period.).

#### (b) Pre–Petition Commitment Procedures

¶ 13 Patient next argues that the court did not have jurisdiction because the proceedings below did not strictly comply with pre-petition procedures mandated for civil commitment proceedings. Patient argues that the failure to file a petition for evaluation was one such flaw.[4]

¶ 14 Prior to the proceedings at issue in this case, Patient was adjudicated GEI and admitted to the Hospital pursuant to A.R.S. §§ 13–502 and –3994 (2010). Section 13–502(D) directs that a defendant adjudicated GEI "be placed under the jurisdiction of the

---

**2.** Additionally, the liberty interests sought to be protected are not at issue in this matter to the same extent as in a traditional civil commitment matter. Patient was in custody prior to filing the petition, and Patient will remain in custody pursuant to his GEI adjudication regardless of the outcome of the petition for treatment.

**3.** Patient argues that the invited error doctrine does not apply to jurisdictional defects. As noted above, there is no indication that the court is divested of jurisdiction as a result of failure to strictly comply with the civil commitment statutes. Thus, the doctrine of invited error does apply.

**4.** Patient also argues that the order for treatment should be vacated because another pre-petition right, to choose one of the evaluating physicians pursuant to A.R.S. § 36–501(12)(a), was denied. As set forth herein, we determine that the State

need not strictly comply with the civil commitment procedures for evaluation, as contrasted with treatment, when a person has been adjudicated GEI and is presently under the supervision of the PSRB. Accordingly, this argument also fails.

Additionally, the record indicates that efforts were made to provide Patient with an independent evaluator during the proceedings. Patient was informed, through the notice of hearing, that he had a right to an independent mental health evaluator. And twice, Patient requested, and was granted, a continuance so that he could obtain an independent medical examination. While Patient did not present testimony or an affidavit from an independent medical evaluation, Patient's failure to do so is not grounds to vacate the court's order.

psychiatric security review board and committed to a state mental health facility," pursuant to A.R.S. § 13–3994. In turn, § 13–3994(A) provides that those found GEI pursuant to § 13–502 "shall be committed to a secure state mental health facility under the department of health services *for a period of treatment.*" (Emphasis added.) Although § 13–3994 provides that an individual is under the jurisdiction of the PSRB "for a period of treatment," the GEI statutory scheme lays out no mechanism as to precisely how any involuntary treatment is to be administered.

¶ 15 *In re MH 2008–000028* is instructive in resolving this matter. *In re MH 2008–000028*, 221 Ariz. 277, 211 P.3d 1261 (App. 2009). Just as our present case deals with the relationship between the GEI statute and the statutory scheme for civil commitment, *MH 2008–000028* dealt with "the interplay between Arizona's civil commitment statutes and its criminal statute governing incompetent defendants." *Id.* at 279, ¶ 1, 211 P.3d at 1263. For reasons similar to those in *MH 2008–000028*, we hold that strict compliance with procedures prior to the petition for treatment was not required here.

¶ 16 In *MH 2008–000028*, the patient had been arrested, and prior to trial, the criminal court ordered an evaluation of his competency pursuant to Arizona Rule of Criminal Procedure 11. *Id.* at ¶ 3. Ultimately, the court found the patient was not competent to stand trial with no substantial probability of being restored to competency. *Id.* at ¶ 4. At the Rule 11 hearing, the court also ordered the patient to be taken for inpatient evaluation pursuant to A.R.S. § 36–530. *Id.* at ¶ 5. The State filed an "Application for Involuntary Evaluation." While similar, this was not a Petition for Court–Ordered Evaluation as required by the statute. *Id.* at 280, ¶ 6, 211 P.3d at 1264. Thereafter, the State filed a Petition for Court–Ordered Treatment and the court issued an order for the patient to undergo inpatient treatment. *Id.* at ¶ 9.

Thus, in *MH 2008–000028*, the State failed to strictly comply with the involuntary commitment statutes; it did not file a petition for court-ordered evaluation before filing an application for involuntary evaluation and conducting an evaluation pursuant to court order. *Id.* at ¶ 6–7.

¶ 17 On appeal, the patient argued that "the court acted without proper authority when it ordered him to undergo an involuntary evaluation and subsequent treatment" without the State first filing a petition for evaluation. *Id.* at 281, ¶ 14, 211 P.3d at 1265. This court rejected the patient's argument stating that rather than strictly applying the civil commitment statutes, it was tasked with "harmoniz[ing] the provisions of the civil commitment statutes and those of a related criminal statute," A.R.S. § 13–4517(1) (2010). *Id.* at ¶ 15. The court reasoned that when an individual is arrested and determined incompetent to stand trial "the process for civil commitment can take a different course." *Id.* at ¶ 18. The patient in *MH 2008–000028* had been found incompetent to stand trial and non-restorable. *Id.* As a result, under A.R.S. § 13–4517(1) the trial court had authority to place the patient in custody of the department of health services for civil commitment.[5] *Id.;* A.R.S. § 13–4517(1). This court determined that, although a court-ordered involuntary evaluation not based on a petition for evaluation is generally invalid, in a case where "the [trial] court first acts pursuant to A.R.S. § 13–4517(1), rather than A.R.S. § 36–501, *et seq.*, the court's authority to act is not predicated on its review of a petition for evaluation." 221 Ariz. at 281–82, ¶ 19, 211 P.3d at 1265–66.

¶ 18 Both the State and Patient, in supplemental briefing this court ordered on the issue, are unable to identify any statutes or administrative regulations that specifically govern the treatment of those committed to the Hospital as GEI. We agree generally with the State's reliance upon the administra-

---

**5.** Arizona Revised Statutes § 13–4517 states in pertinent part:

If the court finds that a defendant is incompetent to stand trial and that there is no substantial probability that the defendant will regain competency within twenty-one months after the date of the original finding of incompetency, any party may request that the court:

1. Remand the defendant to the custody of the department of health services for the institution of civil commitment proceedings pursuant to title 36, chapter 5.

tive regulations that refer to those committed to care at the Hospital. The State points out that the Hospital is a Level One psychiatric acute care hospital, which is required to comply with applicable portions of the Arizona Administrative Code ("A.A.C.") Title 9, Chapter 20, pertaining to the department of health services. A.A.C. R9–20–102(B)(4). Without specifically referring to GEI patients, the general regulation pertaining to a patient's right to consent gives a patient the right

> [t]o give general consent and, if applicable, informed consent to treatment, refuse treatment or withdraw general or informed consent to treatment, unless the treatment is ordered by a court according to A.R.S. Title 36, Chapter 5, is necessary to save the client's life or physical health, or is provided according to A.R.S. § 36–512 [Emergency Medical Care].

A.A.C. R9–20–203 (C)(18). Thus, the administrative scheme sets up the following protocol to permit the Hospital to medicate a patient: (1) when the Hospital has the consent of the patient or a person authorized to consent for the patient; (2) when an emergency is present; or (3) when the court otherwise orders it.

¶ 19 With this statutory and administrative scheme in mind, we agree that the civil commitment statutes generally provide the procedures by which a person found GEI can be administered involuntary treatment. We do not hold that the petition for treatment under the civil commitment statute is the only means by which a GEI defendant can be administered involuntary treatment absent an emergency. That issue is not before us.[6] However, when the Hospital follows the petition for treatment format outlined in the civil commitment statutes but does not strictly comply with the pre-petition procedures stated there, we find no error so long as due process considerations are met.[7] In this sense, our determination is similar to that in *MH 2008–000028* where we found that the application for evaluation under the Rule 11 commitment procedures took the place of a petition for evaluation under the civil commitment statutes. Here, commitment to a mental health facility as a result of a GEI adjudication obviates the need for a petition for evaluation prior to filing a petition for court-ordered treatment. The due process considerations the pre-petition procedures were designed to protect were met by the GEI adjudication.

¶ 20 We are cognizant that the GEI statute provides that "the procedures for civil commitment govern the continued commitment of the person after the expiration of the jurisdiction of the psychiatric security review board." A.R.S. § 13–3994(K). The argument can be made that because the civil commitment procedures are in place after the board's jurisdiction has ended, the procedures cannot be employed during the time period when the board's jurisdiction is still in effect. Given that there are no statutes directly setting forth how involuntary treatment for a GEI defendant is to be administered, and the regulatory scheme for the Hospital invokes the civil commitment scheme generally, we see no error in utilizing the civil commitment procedures in the fashion done here. As a result, we conclude that the trial court's deviation from pre-petition procedures mandated by the civil commitment statutes neither invalidates the court's order of commitment for involuntary mental health treatment nor deprives it of jurisdiction.

---

**6.** The State refers us to *Anderson v. State*, 135 Ariz. 578, 581 n. 1, 663 P.2d 570, 573 n. 1 (App.1982), as potentially resolving this matter. While helpful, that matter is factually distinguishable as it did not deal with a GEI adjudication. We need not resolve whether the commitment to the PSRB for a "period of treatment" alters the analysis set forth in *Anderson*.

**7.** Due process protection "survives criminal conviction and incarceration just as [it does] civil involuntary commitment." *Large*, 148 Ariz. at 236, 714 P.2d at 406. Arizona's due process requires "that forcible administration of dangerous drugs to treat a mentally ill prisoner in nonemergency situations" must be "done pursuant to professional judgment evidenced by a treatment plan which complies with legislative or departmental regulations governing the circumstances for such a forced use of drugs for medical treatment." *Id.* at 239, 714 P.2d at 409. The procedures for obtaining court-ordered treatment satisfy this requirement.

### 2. Sufficiency of the Evidence

¶ 21 Patient also argues that there was insufficient evidence for the court to find that Patient was persistently or acutely disabled. If the court finds by clear and convincing evidence that the patient, as a result of a mental disorder, is a danger to self or others, is persistently or acutely disabled, or is gravely disabled, and is in need of treatment but unable or unwilling to accept it, the court may order involuntary treatment. A.R.S. § 36–540(A) (2009). "We view the facts in a light most favorable to upholding the court's ruling and will not reverse an order for involuntary treatment unless it is 'clearly erroneous and unsupported by any credible evidence.'" *In re MH 2009–002120*, 225 Ariz. 284, 290, ¶ 17, 237 P.3d 637, 643 (App.2010) (internal citations omitted).

¶ 22 Under A.R.S. § 36–501(33), "persistently or acutely disabled" is defined as follows:

[A] severe mental disorder that meets all the following criteria:

(a) If not treated has a substantial probability of causing the person to suffer or continue to suffer severe and abnormal mental, emotional or physical harm that significantly impairs judgment, reason, behavior or capacity to recognize reality.

(b) Substantially impairs the person's capacity to make an informed decision regarding treatment, and this impairment causes the person to be incapable of understanding and expressing an understanding of the advantages and disadvantages of accepting treatment and understanding and expressing an understanding of the alternatives to the particular treatment offered after the advantages, disadvantages and alternatives are explained to that person.

(c) Has a reasonable prospect of being treatable by outpatient, inpatient or combined inpatient and outpatient treatment.

¶ 23 Dr. S. prepared an affidavit and testified at the hearing. He observed that Patient was "very determined, angry and unwilling to negotiate aspects of his treatment ... also he was very agitated about things that he interpreted were directed against him." Patient's perceptions moved him to act out; in one instance, he threw hot coffee on Dr. S., at another time he threatened to hit the doctor with a trash can. Dr. S. testified that Patient did not have good insight into his illness or his need for treatment and that if left untreated, Patient would "continue to be angry and direct his anger and aggression towards people in the community."

¶ 24 Dr. M. also filed an affidavit in support of the petition. He found Patient to be persistently or acutely disabled as a result of suffering from bipolar disorder with psychotic features. The doctor observed that Patient had poor judgment, denied he had a mental illness, and could present a danger to himself or others. The doctor opined that if left unsupervised, Patient would fail to comply with recommended treatment.

¶ 25 Dr. B., Patient's current treating psychiatrist, also testified at the hearing. Dr. B. testified that while Patient was intelligent and articulate, he was very irritable and had mercurial moods. Dr. B. expressed his view that Patient could "earn his way out of the hospital" if he cooperated with treatment. However, Dr. B. testified that he was concerned that if Patient were discharged into the community unsupervised, Patient's aggressive and threatening behavior would cause him to hurt someone or be hurt himself. The acquaintance witnesses' testimony supported the physicians' opinions. D.O., a social worker working in Patient's unit, testified at the hearing that Patient could cause harm to himself or others. D.G., a nurse on Patient's ward, also testified that Patient would become upset and act violently. D.G. testified that if Patient were discharged without supervision she doubted whether he would comply with his medication and she was concerned that his outbursts would cause him to injure himself or others.

¶ 26 In light of the testimony provided at the hearing and the affidavits admitted by stipulation, we conclude the court did not err in finding that Patient was persistently or acutely disabled.

### Conclusion

¶ 27 For the foregoing reasons, we affirm the order of commitment for involuntary treatment.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and PATRICK IRVINE, Judge.