IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE MH2014-002674

No. 1 CA-MH 14-0073
FILED 9-3-2015

Appeal from the Superior Court in Maricopa County
No. MH2014-002674
The Honorable Susan G. White, Judge Pro Tempore

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Anne Phillips
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Anne C. Longo, Bruce P. White
*Counsel for Appellee*

## O P I N I O N

Judge Maurice Portley delivered the Opinion of the Court, in which Presiding Judge Patricia K. Norris and Judge Patricia A. Orozco joined.

P O R T L E Y, Judge:

¶1        Appellant, who is deaf, challenges the trial court's order that she undergo a combination of inpatient and outpatient treatment at a mental health treatment facility. She argues that her statutorily defined due process rights were violated because the court-ordered evaluations were conducted through written communications despite her request for an American Sign Language ("ASL") interpreter. Because a reasonable attempt was made to secure an ASL interpreter and Appellant effectively communicated with both evaluating doctors during the evaluations, we find no due process violation and affirm the court's order.

## FACTS AND PROCEDURAL BACKGROUND

¶2        After Appellant refused voluntary inpatient treatment to stabilize her condition, her psychiatrist filed a petition for court-ordered evaluation in August 2011 alleging that Appellant was persistently or acutely disabled as a result of a mental disorder. The court granted the petition and, based on Appellant's request, also ordered the Court Interpretation and Translation Services office to provide an ASL interpreter.

¶3        Appellant renewed her request for an ASL interpreter the next day before she was interviewed by two psychiatrists, Dr. Michael Hughes, who was on her outpatient treatment team, and Dr. Sead Hadziahmetovic. The hospital social worker attempted to get an ASL interpreter, but one was not available during the time the doctors had to evaluate Appellant. As a result, each doctor interviewed Appellant by asking her written questions in English and getting her written responses.

¶4        After the evaluations were completed, Dr. Hughes filed a petition for court-ordered treatment ("COT") pursuant to Arizona Revised Statutes ("A.R.S.") section 36-533,[1] and attached the affidavits of the evaluating doctors. The affidavits reflected that both doctors made probable diagnoses of "unspecified psychotic disorder" and "schizophrenia," and both explained how Appellant was persistently or acutely disabled and concluded that there was no alternative to involuntary treatment.

¶5        Appellant filed a motion to dismiss, arguing the hospital failed to adhere to statutorily defined due process standards by not providing an ASL interpreter to assist her during the court-ordered

---

[1] We cite the current version of the statute unless otherwise noted.

evaluations. She argued that because the doctors did not use an ASL interpreter during the interviews, the doctors' affidavits were legally insufficient under A.R.S. § 36-501(12)(a)(ii). The trial court considered the motion during the hearing on the COT petition, where she had the benefit of an ASL interpreter.

¶6        Dr. Hughes testified that Appellant requested an ASL interpreter and he passed along the request to the social worker to make the arrangements. The social worker contacted the interpreter service provider, but no ASL interpreters were available. As a result, Dr. Hughes conducted his interview by writing out the questions he wanted Appellant to answer. He also testified that he was able to read Appellant's handwriting, Appellant appeared to understand the written questions, and her answers were appropriately related to the written questions.[2]

¶7        After setting a briefing schedule on Appellant's motion to dismiss, the court continued the hearing to September 12, 2014. At the hearing, the court denied Appellant's motion to dismiss, finding that an attempt had been made to secure an ASL interpreter, but an ASL interpreter was not available during the time the psychiatrists had to evaluate Appellant; and Appellant appeared to be comfortable communicating in writing, especially since "she has done [so] historically and . . . there were little to no indications that there were communicational problems or impediments because she was communicating in writing in English with both doctors." Then, based on all of the evidence presented, the court found that Appellant had a mental disorder and was persistently or acutely disabled and in need of psychiatric treatment, and ordered her to undergo combined inpatient and outpatient treatment.

¶8        Appellant filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. §§ 36-546.01 and 12-2101(A)(10)(a).

---

[2] Appellant stipulated to the admissibility of Dr. Hadziahmetovic's affidavit because he was unavailable to testify at the hearing. His affidavit similarly noted: "The patient has bilateral deafness, and the social worker made attempts to have a sign language interpreter come in to help perform this psychiatric interview; however, the interpreter was not available until the next day, and since this affidavit was due today by 1600 hours, I conducted the interview with the patient writing down the questions and having her respond to me in the same manner."

**DISCUSSION**

**¶9**        We will not disturb an order for treatment unless it is "clearly erroneous or unsupported by any credible evidence." *In re Mental Health Case No. MH 94–00592*, 182 Ariz. 440, 443, 897 P.2d 742, 745 (App. 1995) (citing *In re Coconino Cty. No. MH 1425*, 176 Ariz. 525, 528, 862 P.2d 898, 901 (App. 1993)).  In reviewing the record to determine whether the order is supported by substantial evidence, *see Pima County Mental Health Service Action No. MH–1140–6–93*, 176 Ariz. 565, 566, 863 P.2d 284, 285 (App. 1993) (citing *Commitment of an Alleged Mentally Disordered Person MH 91–00558*, 175 Ariz. 221, 224, 854 P.2d 1207, 1210 (App. 1993)), "[w]e view the facts in the light most favorable to sustaining the trial court's judgment." *Cimarron Foothills Cmty. Ass'n v. Kippen,* 206 Ariz. 455, 457, ¶ 2, 79 P.3d 1214, 1216 (App. 2003) (quoting *Sw. Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, 440, ¶ 2, 36 P.3d 1208, 1210 (App. 2001)) (internal quotation marks omitted).  We review the application and interpretation of statutes de novo. *In re MH2011-000914*, 229 Ariz. 312, 314, ¶ 7, 275 P.3d 611, 613 (App. 2012); *see also In re MH2010-002348*, 228 Ariz. 441, 444, ¶ 7, 268 P.3d 392, 395 (App. 2011).

**¶10**        Appellant argues that her due process rights were violated because the hospital failed to secure an ASL interpreter to assist during her interviews with the evaluating psychiatrists.  Relying on A.R.S. § 36-501(12)(a)(ii), she contends that because she was not provided an ASL interpreter, the doctors' affidavits were legally insufficient and the trial court's involuntary treatment order must be vacated.  We disagree.

**¶11**        Due process requires courts to adhere strictly to statutes pertaining to court-ordered treatment. *In re MH 2007–001264*, 218 Ariz. 538, 539, ¶ 6, 189 P.3d 1111, 1112 (App. 2008); *see also* A.R.S. §§ 36–501 to -550.08; *In re Pinal Cty. Mental Health No. MH-201000029*, 225 Ariz. 500, 501, ¶ 5, 240 P.3d 1262, 1263 (App. 2010) (stating that a lack of strict compliance makes the proceedings void).

**¶12**        The statutory framework provides that a petition for involuntary treatment "shall be accompanied by the affidavits of the two physicians who participated in the evaluation," A.R.S. § 36-533(B), and that "every reasonable attempt shall be made to conduct the evaluation in any language preferred by the person," A.R.S. § 36-501(12)(a)(ii).  The plain language of the statute does not mandate that the court-ordered evaluations be conducted with an ASL interpreter if requested by a deaf patient. *Id.* Instead, § 36-501(12)(a)(ii) requires that "every reasonable attempt" be

made to acquire an interpreter to assist the patient in order to ensure that the patient and doctors can communicate during the evaluations.

¶13　　　　Section 36-501(12)(a)(ii) does not, however, define "every reasonable attempt." As a result, we look to the ordinary meaning of the words. *See* A.R.S. § 1–213; *HCZ Constr., Inc. v. First Franklin Fin. Corp.*, 199 Ariz. 361, 364, ¶ 10, 18 P.3d 155, 158 (App. 2001) ("Words are given their ordinary meaning unless the context of the statute requires otherwise.") (citation omitted). "Reasonable" is defined to include "[g]overned by or in accordance with reason or sound thinking . . . [w]ithin the bounds of common sense . . . fair." Webster's II New College Dictionary (1995); *see also* Black's Law Dictionary (10th ed. 2014) (defining "reasonable" as "[f]air, proper, or moderate under the circumstances"). And, "attempt" is defined as including "[t]o try to do, make, or achieve." Webster's II New College Dictionary (1995). Consequently, the determination of "every reasonable attempt" will be an ad hoc determination based on specific facts, as well as the patient's ability to communicate with or without an interpreter in the patient's preferred language.

¶14　　　　The doctors had, by statute, "less than seventy-two hours" to evaluate Appellant and submit their reports after learning that the court had ordered her evaluation. A.R.S. § 36-530(B). And like the other requirements for involuntary treatment proceedings, it is one that requires strict compliance. *See In re MH 2008-000438*, 220 Ariz. 277, 279, ¶ 7, 205 P.3d 1124, 1126 (App. 2009). Here, the court heard that the doctors attempted to secure an ASL interpreter for Appellant before their interviews with her and when they learned that one was not readily available, and would not be in the time they had to conduct their evaluations, they communicated with Appellant in writing. In fact, Dr. Hadziahmetovic stated in his stipulated affidavit that the interpreter was not available and would not be by 4:00 p.m. (1600 hours), the time he had to submit his evaluation. And because the doctors, like Appellant's treatment coordinator and others, were able to communicate with Appellant in writing, the court did not err by finding the doctors made a reasonable effort to secure an ASL interpreter and denying Appellant's motion to dismiss.

¶15　　　　Moreover, there was no evidence indicating that there was a more reasonable option available or that further efforts to secure an ASL interpreter from another source would have been successful. And although communicating in writing was not Appellant's preferred method of communication, she does not complain about, and the record does not show, any communication problems or impediments during the evaluations.

**¶16** Appellant also argues that the Americans with Disabilities Act ("ADA") and federal case law support her argument. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1990). The regulation implementing the ADA states that:

> Although in some circumstances a notepad and written materials may be sufficient to permit effective communication, in other circumstances they may not be sufficient. For example, a qualified interpreter may be necessary when the information being communicated is complex, or is exchanged for a lengthy period of time. Generally, factors to be considered in determining whether an interpreter is required include the context in which the communication is taking place, the number of people involved, and the importance of the communication.

28 C.F.R. Pt. 35, App. B § 35.160 (2011). Consequently, based on the plain language of the ADA and the implementing regulations, the ADA does not mandate that a deaf patient have an ASL interpreter for an evaluation when one is not available in the short time required for the evaluation and the patient is able to effectively communicate in writing.

**¶17** Appellant also relies on *Randolph v. Rodgers*, 170 F.3d 850 (8th Cir. 1999) and *Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008) to support her argument. In *Randolph*, a deaf inmate secured a permanent injunction in federal district court arguing that the Missouri Department of Corrections had violated Missouri Statute § 476.753(1)(4) by failing to provide him with an ASL interpreter during disciplinary proceedings. 170 F.3d at 854-55. On appeal, the circuit court vacated the injunction on other grounds, and in doing so noted that the plain language of the Missouri statute required that "a designated responsible authority *shall provide*" a qualified interpreter at certain proceedings. *Id.* at 859 (emphasis added). Here, and unlike the mandatory language of the Missouri statute that the responsible authority "shall provide," the Arizona statute only requires that "every reasonable attempt" be made to provide an interpreter. *Compare* A.R.S. § 36-501(12)(a)(ii) *with* Mo. Stat. § 476.753(1)(4). Consequently, *Randolph* does not inform our analysis in this appeal.

**¶18** In *Tucker*, the police responded to a domestic dispute and after learning that the family members suffered from hearing and speech

impediments, communicated in writing. 539 F.3d at 528. The police arrested a number of family members for assault, disorderly conduct and resisting arrest. *Id.* at 528-29. The arrestees, and their deaf mother, subsequently sued the city and county for civil rights violations, alleging in part that the city's failure to provide an interpreter when the police responded to the domestic disturbance call, as well as during their arrest, post-arrest detention, initial appeal and dispositional hearing violated the ADA. *Id.* at 530. The federal district court granted summary judgment for the city and county, and the Sixth Circuit affirmed after finding there was no intentional discrimination and that the police officers were able to communicate effectively with all parties in writing. *Id.* at 535-36. Consequently, in looking at the evidence, the court found that even if an ASL interpreter had been requested for certain court hearings, the individuals properly proceeded without one, and affirmed the summary judgment. *Id.* at 540-42.

**¶19**　　　　Here, like the litigants in *Randolph* and *Tucker*, Appellant communicated with the psychiatrists in writing after reasonable efforts to locate an ASL interpreter proved unsuccessful. Therefore, based on the record, the trial court did not err by denying Appellant's motion to dismiss for violating her due process rights.

## CONCLUSION

**¶20**　　　　For the foregoing reasons, we affirm the court's order.



Ruth A. Willingham · Clerk of the Court
FILED: ama